IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| William L. Rogers; WLR Investments, LP; William L. Rogers as trustee of the C & C Rogers Trust; and Point Farm Ventures, LLC, | ) ) ) ) ) ) ) | Civil Action No. 2:22-00279-RMG |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| Thomas C. Rowland, III; P. Douglas, McMillan; L. Harris Chewning, IV; | ) ) ) | |
| Defendants. | ) ) ) ) | |

Before the Court is Thomas C. Rowland, III; P. Douglas McMillan; and L. Harris Chewning IV's ("Defendants") motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6),12(b)(7), and 19. (Dkt. No. 20). For the reasons stated below, the motion is denied.

## I.    Background

This action was brought by Plaintiffs to recover approximately $1,000,000.00 that Defendants allegedly unlawfully removed from Point Farm Ventures, LLC ("PFV"). Plaintiffs William L. Rogers ("Rogers"); WLR Investments, LP; and William L. Rogers as the trustee of the C & C Rogers Trust along with Defendants Thomas C. Rowland, III; P. Douglas McMillan; and L. Harris Chewning, IV were all members of PFV prior to the initiation of this action. (Dkt. No. 20 at 2); (Dkt. No. 14 ¶ 16). Plaintiffs allege PFV was formed in 2017 to acquire a 2,000-acre farm in Charleston, South Carolina. (Dkt. No. 14 ¶¶ 15-16). Plaintiffs allege PFV was a manager-managed LLC. (*Id.* ¶ 54). Plaintiffs allege American Timberlands Company, LLC ("ATC"), was

1

the manager of PFV and Defendants managed ATC.  (*Id.* ¶ 16).  Plaintiffs allege that pursuant to an operating agreement, members could lend money to PFV, in which case PFV would not make any distribution to the members until the loans were paid back.  (*Id.* ¶ 17).   Plaintiffs allege they loaned over $2 million dollars to PFV.  (*Id.* at ¶ 36).  Plaintiffs allege they relied on the terms of the operating agreement that no distribution would be made to members until all member loans were paid back.  (*Id.* ¶ 20).  Plaintiffs allege Defendants executed personal guarantees for 50 % of Plaintiffs' loans to PFV that were documented in various promissory notes.  (*Id.* ¶ 22-33).

Plaintiffs allege in October 2021, PFV sold its primary asset for $1,914,457 and executed two promissory notes due in 2024: a note secured by a second mortgage for $790,403 and another unsecured note for $154,054.  (*Id.* ¶ 35).  Plaintiffs allege Defendants did not use all of the money to partially satisfy the loans Plaintiffs made to PFV, but instead caused PFV to pay $914,457.00 toward the loans and disbursed the remainder of the money (approximately $1,000,000.00) to themselves and ATC.  (*Id.* ¶ 37).  Plaintiffs allege Defendants used the money "to fund personal expenses, including payments made by [Defendant] Rowland toward one or more mortgage loans secured by real property located at 58 Swan Point Trail, Georgetown, SC 29440."  (*Id.* ¶ 63).

In late December 2021, Defendants emailed a signed Assignment and Acceptance Agreement to Plaintiff Rogers whereby Defendants resigned from their positions at PFV and transferred and assigned all of their ownership interest in PFV to Plaintiff.  (Dkt. No. 17-1 at 10). The agreement states it was effective December 31, 2021.  (*Id.* at 10).  Plaintiff alleges that on January 5, 2022, Defendant Rowland as CEO of ATC resigned as manager of PFV effective immediately. (Dkt. No. 14 ¶ 41).  Rogers alleges he is the sole member of PFV.  (*Id.* ¶¶ 41-42).

On January 28, 2022, Plaintiffs initiated the instant lawsuit.  (Dkt. No. 1). On March 15, 2022, Plaintiffs filed an Amended Complaint that added PFV as a Plaintiff.  (Dkt. No. 14).  The

amended complaint asserts four counts for: (I) breach of contract as to the operating agreement;

liability for unlawful distributions pursuant to the South Carolina Uniform Limited Liability Act,

S.C. Code Ann. § 33-44-407; (III) breach of contract as to guarantees in promissory notes; and

(IV) constructive trust.  Plaintiffs seek a money judgment as to Counts I -III.  As to Count IV,

Plaintiffs seek for the Court to impose a constructive trust over the $983,300.55 Defendants

allegedly misappropriated.  (*Id.* at p. 14).  Defendants filed a motion to dismiss the amended

complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), and 19. (Dkt.

No. 20).  Plaintiffs filed a response in opposition.  (Dkt. No. 24).  Defendants filed a reply.  (Dkt.

No. 25).  The matter is ripe for the Court's adjudication.

## II.    Legal Standards

### a.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a cause of

action based on lack of subject-matter jurisdiction. "Federal courts are not courts of general

jurisdiction; they have only the power that is authorized by Article III of the Constitution and the

statutes enacted by Congress pursuant thereto." *Brickwood Contractors, Inc. v. Datanet*

*Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch.*

*Dist.,* 475 U.S. 534, 541 (1986)). Challenges to jurisdiction under Rule 12(b)(1) can be raised in

two different ways: facial attacks and factual attacks.  *Thigpen v. United States,* 800 F.2d 393, 401

n.15 (4th Cir. 1986) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)), *disagreed with*

*on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988). A facial attack questions the

sufficiency of the complaint. *Id.* When presented with this argument, the court must accept the

allegations in the complaint "as true, and materials outside the pleadings are not considered." *Id.*

### b.    Rule 19

3

Rule 19 of the Federal Rules of Civil Procedure addresses the required joinder of parties and provides, in pertinent part:

"(a) Persons Required to Be Joined If Feasible.

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.. . .

(2) Joinder by Court Order.  If a person has not been joined as required, the court must order that the person be made a party. . . .

(b) When Joinder is Not Feasible.  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. . . ."

Fed. R. Civ. P. 19(a)-(b).

### c.  Rule 12(b)(7)

Rule 12(b)(7) provides that an action may be dismissed for failure to join a required party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7). "The inquiry contemplated by Rule 19 is a practical one"

which is left "to the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980). First, the court must determine whether an absent party is "necessary" to the action, as detailed in Rule 19(a). *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). If joinder is necessary, but infeasible, the court must then determine whether the party is "indispensable" under Rule 19(b), such that the action cannot continue in that party's absence. *See id.* If the person is not a necessary party under Rule 19, the inquiry ends. *Mainstream Constr. Grp., Inc. v. Dollar Props.*, LLC, No. 7:09-cv-00148-BR, 2010 WL 2039671, at * 2 (E.D.N.C. May 20, 2010). "In general, federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder, and dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995), *aff'd*, 103 F.3d 120 (4th Cir. 1996).

On consideration of a Rule 12(b)(7) motion, the movant bears the burden of "show[ing] that the [absentee] is needed for just adjudication." *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 92 (citation omitted). While all factual allegations in the complaint are accepted as true, and inferences are drawn in favor of the nonmoving party, the court may also consider materials outside the pleadings in making its determination. *See Debbie's Staffing Servs., Inc. v. Highpoint Risk Servs., LLC*, No. 1:17CV657, 2018 WL 6031207, at *2 (M.D.N.C. Nov. 16, 2018).

### d.  Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the

merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.    Discussion

Defendants move to dismiss the amended complaint on three primary grounds. First, Defendants move to dismiss the amended complaint pursuant to Rules 12(b)(7) and 19 for Plaintiffs' failure to join ATC as a necessary and indispensable party. Defendants contend the Court cannot join ATC as a party without destroying diversity of citizenship amongst the parties and the Court's subject matter jurisdiction, therefore requiring dismissal. (Dkt. No. 20 at 1). Specifically, Defendants contend ATC is a necessary party because it is the subject of Plaintiffs' breach of contract claim. (Dkt. No. 5, 7-9). Defendants argue the operating agreement grants ATC sole authority to make distribution decisions for PFV and Defendants had no authority to act on behalf of PFV. (*Id.* at 7). Defendants argue the Court cannot award complete relief among the

6

existing parties without the presence of ATC because there are no claims of alter ego or piercing

the corporate veil. (*Id.* at 8). Defendants argue disposition of this case without ATC will subject

Defendants to the risk of incurring multiple inconsistent obligations as it relates to differing

ownership in ATC. (*Id.* at 7-9).

Rule 19(a) first requires the Court to determine whether ATC is a necessary party to this

action. Fed. R. Civ. P. 19(a)(1). The core of Plaintiffs' breach of contract claim is that Defendants

breached the operating agreement by approving disbursements of PFV funds to Defendants and

ATC. (*Id.* ¶ 44). Plaintiffs allege Defendants personally guaranteed Plaintiffs' loans to PFV and

failed to repay Plaintiffs, thereby breaching the promissory notes. Plaintiffs allege Defendants

engaged in fraud by transferring all of their interest in PFV to Plaintiff Rogers. Defendants do not

argue ATC has an interest in this litigation, which renders a necessary party analysis under Rule

19(a)(1)(B) inapplicable.

Dismissal of a case [for nonjoinder] is a drastic remedy . . . which should be employed only

sparingly." *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000).

"Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only

when the resulting defect cannot be remedied and prejudice or inefficiency will certainly

result." *Owens-Ill., Inc. v. Meade,* 186 F.3d 435, 441 (4th Cir. 1999). While it may be convenient

to add ATC as a party in this case, a party is not necessary simply because joinder would be

convenient, or because two claims share common facts. *S. Co. Energy Mktg., LP v. Va. Electric*

*& Power Co.*, 190 F.R.D. 182, 185 (E.D. Va. 1999) (citing *Schlumberger Indus. Inc. v. Nat'l Surety*

*Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994)). ATC appears to be merely alleged as a joint tortfeasor,

and "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as

defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). The Court does

not find ATC is not a necessary party to this action and need not conduct an analysis as to whether it would be an indispensable pursuant to Rule 19(b).  Defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(7) and 19 is denied.

Second, Defendants briefly move to dismiss the amended complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  Defendants acknowledge that three of four Plaintiffs: WLR Investments, LP; William L. Rogers, as trustee of the C & C Rogers Trust; and William L. Rogers are all alleged to be citizens of Texas.  (Dkt. No. 14 ¶¶ 6-7; (Dkt. No. 20 at 2); *Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004) (LLC members are treated like partnerships in that the citizenship of each member applies).  Defendants acknowledge they are all alleged to be citizens of South Carolina.  (*Id.* ¶¶ 9-11; Dkt. No. 20 at 2).  Defendants do not challenge the jurisdictional allegations establishing diversity of citizenship amongst these parties, nor do they contest the allegation that the amount in controversy exceeds $ 75,000.00, thereby establishing the jurisdictional threshold pursuant to 28 U.S.C. § 1332(a).

Defendants' primary challenge to the Court's subject matter jurisdiction relates to the citizenship of PFV. (Dkt. No. 9-11).  On December 22, 2021, Defendants emailed Plaintiff Rogers a signed Assignment and Acceptance Agreement whereby Defendants resigned from any and all positions held at PFV and transferred and assigned all of Defendants' ownership interest in PFV to Plaintiff Rogers.  (Dkt. No. 17-1 at 7-8, 10).  The agreement states it was effective on December 31, 2021.  (*Id.* at 10).  On January 5, 2022, Defendant Rowland as CEO of ATC resigned as manager of PFV.  (Dkt. Nos. 14 ¶ 41; 17 at 2).

Plaintiff alleges he executed the signed agreement on January 28, 2022 and delivered it to Defendants.  (Dkt. No. 14 ¶ 42; Dkt. No. 17-1 at 5) (text message referencing Plaintiffs' January 28, 2022 email to Defendants).  Defendants argue Rogers returned the signed agreement to

8

Defendants on February 2, 2022. (Dkt. Nos. 20 at 10; 17-1 at 3) (McMillan Affidavit and Plaintiffs'

text message). Defendants argue, therefore, at the time the original complaint was filed on January

28, 2022, PFV consisted of Plaintiff Rogers (a Texas resident) and the three Defendants (South

Carolina residents).   (Dkt. No. 20 at 11).   Irrespective of when Plaintiff returned the signed,

executed agreement, Plaintiff alleges and argues that he signed the agreement on January 28, 2021.

Defendants do not dispute this, only that it was delivered on February 2.  Defendants do not dispute

that the agreement clearly states it was effective December 31, 2021.  (Dkt. No. 17-1 at 10);

*Runway Dev. Co., LLC v. E. Coast Hous., Inc.*, No. 4:21-cv-00341-JD, 2021 WL 5911211, at * 3

(D.S.C. Mar. 15, 2021) (concluding parties likely entered valid and enforceable contract on the

date buyer signed agreement, not the later date of delivery).  The Court finds that at the time the

original complaint was filed Plaintiff Rogers was the sole member of PFV and there is complete

diversity of citizenship amongst the parties.  Defendants' motion to dismiss the amended complaint

pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is denied.

Second, Defendants move to dismiss the amended complaint pursuant to Rule 12(b)(6) for

failure to state a claim.  Defendants move to dismiss Plaintiffs' claim for unlawful distributions in

violation of the South Carolina Uniform Limited Liability Company Act, S.C. Code Annotated §

§ 33-44-406 and 33-44-407, for failure to state a claim.  Defendants argue Plaintiffs may not assert

a direct action for unlawful distributions pursuant to Section 33-44-407 because the statute does

not apply to disputes like the instant one where the parties have a written operating agreement that

otherwise addresses distributions to members.  (Dkt. No. 20 at 13-14); (Dkt. No. 25 at 3) (citing

S.C. Code Ann. § 33-44-103(a), (b)(1)-(7)).  Plaintiffs argue the rights contained within Section

33-44-407 continue to apply when, as here, the operating agreement does not "otherwise provide"

guidance as to the issue at hand.  (Dkt. No. 24 at 14).

"Generally, operating agreements are superior to statutory authority where they are in place and address a matter, inasmuch as it is only when an operating agreement is silent as to some matter that statutory law will apply." *Park Regency, LLC v. R & D Dev. of the Carolinas, LLC*, 741 S.E.2d 528, 534 (S.C. Ct. App. 2012) (quoting *Clary v. Borrell*, 727 S.E.2d 773, 778 (S.C. Ct. App. 2012); *see also* S.C. Code Ann. § 33-44-103(a) ("To the extent the operating agreement does not otherwise provide, this chapter governs relations among the members, managers, and company.").

The South Carolina Uniform Limited Liability Company Act, Section 33-44-406(a) states:

"[A] distribution may not be made if (1) [the LLC is unable] to pay its debts as they become due in the ordinary course of business, or (2) [when] the company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the company were to be dissolved, wound up, and terminated at the time of the distribution, to satisfy the preferential rights upon dissolution, winding up, and termination of members whose preferential rights are superior to those receiving the distribution."

S.C. Code Ann. § 33-44-406(a). The statute also creates liability for anyone that authorizes a member distribution while a company is insolvent, in breach of his or her fiduciary duties. To establish liability pursuant to S.C. Code Ann. § 33-44-407(a), a plaintiff is required to prove the following:

"(1) that Defendant was a manager of a manager-managed LLC or a member of a member-managed LLC; (2) that Defendant assented to or authorized a distribution in violation of S.C. Code Ann. § 33-44-406, the company's operating agreement, or the company's articles of organization; and (3) that Defendant violated his or her fiduciary duties pursuant to S.C. Code Ann. § 33-44-409."

S.C. Code Ann. § 33-44-407(a); *Herman v. Miller*, No. 2:18-cv-1509-BHH, 2019 WL 4643573, at *7 (D.S.C. Sept. 24, 2019) (citing *In re JK Harris & Company, LLC*, 512 B.R. 562, 568 (Bankr. D.S.C. Aug. 8, 2012)). Further, Section 33-44-407(b) provides a right of action against any member who receives distributions of corporate property in violation of Section 33-44-406, the articles of organization, or the operating agreement. *Id.* at § 33-44-407(b); *In re Derivium Capital,*

10

*LLC*, 380 B.R. 407, 415 (Bankr. D.S.C. Dec. 22, 2006).  Thus, the language of Section 33-44-407 appears to contemplate the existence of an operating agreement alongside a claim for unlawful distribution.

The parties dispute the extent to which the operating agreement addresses unlawful distributions.  (Dkt. Nos. 25 at 2-3; 24 at 13-14).  The parties appear to cite to various portions of the operating agreement but have not attached the operating agreement as an exhibit to Defendants' motion or related briefing.  At this juncture it would be premature for the Court to foreclose Plaintiffs' statutory claim for unlawful distributions.  Viewing the well-plead allegations in the amended complaint as true, the Court finds it sufficiently states a claim for unlawful distributions pursuant to the South Carolina Uniform Limited Liability Company Act, S.C. Code Ann. § 33-44-407.  (Dkt. No 14 ¶¶ 47-54). Defendants' 12(b)(6) motion to dismiss Plaintiffs' claim for unlawful distributions is denied.

Third, Defendants move to dismiss Plaintiffs' constructive trust claim.  (Dkt. No. 20 at 14).  Defendants argue the amended complaint contains no allegation that real property was acquired with the funds Defendants allegedly unlawfully acquired from PHV.  (*Id.* at 15). Defendants argue Plaintiffs do not allege any facts that plausibly identify the property over which Plaintiffs seek a constructive trust.  (*Id.* at 16-17).

"An action to declare a constructive trust is in equity, and a reviewing court may find facts in accordance with its own view of the evidence."  *Wellin v. Wellin*, 135 F. Supp. 3d 502, 525 (D.S.C. 2015) (quoting *Carolina Park Assocs., LLC v. Marino*, 732 S.E.2d 876, 879 (2012)).  A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding legal title.  *Id.*  Constructive trusts result from "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an

11

obligation in equity to make restitution" and "is resorted to by equity to vindicate right and justice or frustrate fraud." *Id*. "Fraud is an essential element, although it need not be actual fraud." *Lollis v. Lollis*, 354 S.E.2d 559, 561 (1987). A constructive trust may only be placed over ascertainable and sufficiently identifiable property- the property subject to the trust, or the trust res." *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 126 F. Supp.3d 611, 642 (D.S.C. 2015). In order to maintain a claim for constructive trust, the plaintiff must be able to trace the funds into the res at issue. *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 723 (4th Cir. 1998).

The amended complaint alleges Defendants wrongfully distributed $983,300.55 in funds from PFV and used those funds in part toward to pay a mortgage loan secured by real property located at 58 Swan Point Trail, Georgetown, SC 29440. (Dkt. No. 14 ¶ 63). The Court finds that Plaintiffs have sufficiently stated a claim for constructive trust. Defendants' 12(b)(6) motion to dismiss Plaintiffs' constructive trust claim is denied.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 20) is **DENIED**. **AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

December 27, 2022
Charleston, South Carolina